533 P.2d 720

STATE TAX COMMISSION of Arizona, an agency of the State of Arizona, and L. Waldo DeWitt, John M. Hazelett and Robert Kennedy, as members of and constituting said State Tax Commission of Arizona, Appellants,

v.

CATERPILLAR TRACTOR CO., a corporation, Appellee.

No. 1 CA–CIV 2356.

Court of Appeals of Arizona, Division 1, Department A.

April 8, 1975.

Rehearing Denied May 13, 1975.

Review Denied June 10, 1975.

Bruce E. Babbitt, Atty. Gen. by James D. Winter, Asst. Atty. Gen., Phoenix, for appellants.

Jennings, Strouss & Salmon by Clarence J. Duncan, M. Byron Lewis, Phoenix, Rex E. Lee, Provo, Utah, for appellee.

## OPINION

DONOFRIO, Judge.

This case is before us on appeal by the Arizona State Tax Commission from a judgment in the Maricopa County Superior Court which determined that Caterpillar Tractor Co. was not taxable by the State of Arizona on certain income arising out of interstate sales of machines and parts from Caterpillar operations outside the State to its two independent Caterpillar retail dealers within Arizona. The controversy arose when the State Tax Commission (hereafter "Tax Commission") assessed Caterpillar for certain alleged deficiencies in its state income tax for the years 1959 through 1967, purportedly based upon A.R.S. § 43–135 and Arizona Income Tax Regulations, § 135–8. Caterpillar protested the deficiency assessment to the Tax Commission, and from an adverse ruling there it appealed to the Superior Court under the provisions of A.R.S. § 43–177(f)(1). The parties stipulated to submit the controversy to the trial court upon the pleadings, the deposition of Norman F. Sattem (Caterpillar's manager of Dealer Administration in the Western Division), exhibits supplied by the parties, and legal memoranda submitted by the parties. Judgment was entered in favor of Caterpillar, reversing the ruling of the Tax Commission. No findings of fact or conclusions of law were requested by the parties or made by the trial court.

The Tax Commission's appeal presents three questions for our determination: first, did the trial court have subject matter jurisdiction; second, does the Arizona Income Tax Regulation § 135–8(5) require inclusion of Caterpillar sales to its Arizona dealers in the sales numerator of the three-factor income tax formula; and third, if the Caterpillar sales to its Arizona dealers is included, would it be constitutional?

We will first address the question of the trial court's subject matter jurisdiction. The Tax Commission asserts that Caterpillar failed to comply with the provi-

sions of A.R.S. § 43–177(e) in that it did not file its protest of the deficiency assessment to the Commission in the proper form. The Tax Commission asserts that the protest made by letter from Caterpillar's attorney was not verified under oath, and therefore not a valid protest within the time limitations of the statute. The applicable statute on filing protests is A.R.S. § 43–177(e) which provides:

> "(e) Protest, when to be filed. Within ninety days after the mailing of each notice of additional tax proposed to be assessed the taxpayer may file with the department a *written protest* against the proposed additional tax, specifying in the protest the grounds upon which it is based. Such written protest shall be prepared and *verified* in the manner prescribed by the department." (Emphasis added).

The last sentence above provides that the Tax Commission is to prescribe the manner of preparing and verifying the protest. The Tax Commission had not seen fit to do so at the time of this controversy. We therefore affirm the trial court in its decision that the written protest letter filed by Caterpillar's attorney was a valid protest under the statute, and that when appealed to the Superior Court that court had subject matter jurisdiction for the trial *de novo* that was conducted there in accordance with A.R.S. § 43–177(f).

We now turn to the heart of this controversy, which is the proposed application by the Tax Commission of its Regulation § 135–8 to include in its sales factor numerator of the three-factor tax formula those interstate sales of Caterpillar machines and parts to its Arizona dealers. The three-factor income tax formula is based on a relationship between a taxpayer's property located in the state with its total property holdings everywhere, its sales within the state in relation to its total product sales, and its in-state payroll in relation to its total payroll. Without getting into confusing detail, the three-factor formula is then applied to a foreign corporation's total in-

come to reach a determination of its state income tax. The formula has been held constitutional by the United States Supreme Court. See Northwestern States Portland Cement Co. v. Minnesota, 358 U. S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1958).

■ The problem in the instant case is whether these interstate sales by Caterpillar from its offices in Peoria, Illinois, and Colorado to Arizona dealers can be considered "Arizona sales" under the regulation. The Regulation, § 135–8(5), described the sales factor as follows:

"(5) Sales. The sales or gross receipts factor is computed on the basis of gross sales or receipts less returns and allowances. *The numerator of the sales fraction includes sales resulting from employee sales activities of the taxpayer within Arizona.* This rule applies to repeat or mail order sales resulting from prior employee soliciations. *Arizona sales include sales originating from sales activities within the State whether or not the sale actually is consummated in Arizona.* Promotional activities of an employee also are given weight as a sales factor. Receipts from transportation of freight should be allocated to the State where the freight is picked up. Receipts from the transportation of passengers by rail, bus, plane or ship should be allocated to the State where the tickets are sold to the passengers. Receipts from the communication of messages by telephone or telegram should be allocated to the state where the customer places the call or turns in the message. Sales which are made through brokers or factors shall be explained in a schedule attached to the return." (Emphasis added).

We hold that the contracts with Arizona by those Caterpillar representatives who traveled into Arizona or resided here were not sufficient to constitute sales or promotional activities within the meaning of the above regulation, and that Caterpillar's interstate sales could not be considered "Arizona sales" under the regulation.

We think that a distinction should be made between the sales of Caterpillar machines by the two Arizona dealers to Arizona customers (which are clearly taxable to the dealers) and those interstate sales of Caterpillar machines and parts from Illinois and Colorado to the two Arizona dealers (which in the instant case are not taxable by Arizona). Although no findings of fact were made by the trial court, we think it proper to assume that the trial court found as a matter of fact that these sales were not "Arizona sales." We think the evidence would support such a conclusion.

The Caterpillar dealerships in Arizona are independently owned, and they carry competing lines of machinery along with the Caterpillar machines. The dealers operate under a sales and service agreement with the Caterpillar office in Illinois, and under this agreement they carry Caterpillar machines and parts for retail sale, maintain Caterpillar approved service departments, and a staff of factory trained Caterpillar personnel for service and merchandising techniques. All sales of machines and parts are made through orders placed by the Arizona dealers directly with the out-of-state factories in Illinois or Colorado for shipment to Arizona. Shipments are F.O.B. point of shipment, and the dealer pays the transportation charges in the usual case. Title passes at the shipping point.

Caterpillar maintains a Proving Grounds in Arizona which tests new designs of Caterpillar equipment. Its operation is not a factor in the interstate sales at issue in the instant case.

Those Caterpillar personnel whose activities within Arizona are the alleged "sales activities" include:

1) District Representatives who act as liaisons between the Caterpillar home office in Illinois and the dealers in Arizona to promote good relations between Caterpillar and its dealers. There are two such representatives who cover Arizona. One resides in New Mexico and spends approximately thirty percent of his time in Arizo-

na; the other resides in California and spends approximately thirty percent of his time in Arizona. Neither district representative has authority to promote sales or accept orders, nor do they do so.

2) Earth-moving equipment representatives who help the local dealers with problems in that area. There are two of these Caterpillar representatives who cover Arizona. One lives in New Mexico and spends twenty-five percent of his time in Arizona; the other lives in California and spends ten percent of his time in Arizona.

3) Service Representatives who assist the dealers in handling technical service problems and keep the Caterpillar home office informed of the performance of its products. There are two of these. One resides in Arizona and spends fifty percent of his time in Arizona; the other resides in California and spends twenty percent of his time in Arizona.

4) Additionally, there are Parts Sales Representatives, Industrial Division Field Representatives, Industrial Division Service Representatives, Field Engineers, and a photographer who spend various portions of their working time within Arizona.

As stated in the uncontradicted deposition of Norman F. Sattem, the Manager of Dealer Administration in the Western Division for Caterpillar, none of these various Caterpillar representatives are authorized to promote or solicit sales between the dealers and Caterpillar. He testified further that Caterpillar does not lease or own any office space in Arizona except those offices for its local engineers at the Proving Grounds, and the traveling Field Representatives described above are not allowed to visit or use those offices at the Proving Grounds. From the deposition and the record it is evident that the Arizo-

na Caterpillar dealers are highly independent of the Caterpillar home office and that the representatives from Caterpillar serve in an advisory capacity only, and the dealers are free to disregard their advice if they disagree. The local dealers are not bound by Caterpillar's suggested retail prices for its machinery, but they set their own prices; they do not maintain standard form inventory and sales records, and the dealers have their own nonstandardized contracts with customers.

We think that the record adequately supports the judgment of the trial court that the sales in question were interstate sales and not "Arizona sales" as required by the Regulation. The activities of the various Caterpillar traveling representatives may in some slight way promote sales between Caterpillar and these two dealers, but the main thrust of their Arizona activities is to assist the dealers in their efforts to make sales between the dealer and its Arizona customers. The effect which these traveling representatives have on sales between Caterpillar and its Arizona dealers is insubstantial and indirect and would not be sufficient to classify these interstate sales as "Arizona sales."

In holding that these sales are not "Arizona sales" as required by the Arizona Income Tax Regulation § 135–8(5), we find no basis for the State of Arizona to make deficiency assessments based on Caterpillar's interstate sales to the local Arizona dealers. In so holding, we do not reach the constitutional question of whether such a taxing scheme would violate the Interstate Commerce and due process clauses of the United States Constitution.

Affirmed.

OGG, P. J., and STEVENS, J., concur.